UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>AMERICO MASSA,<br><br>Defendant. | 00-cr-1118 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.

On December 2, 2002, Americo Massa pled guilty to three Counts pursuant to a plea agreement: (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) ("Count 1"); (2) conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C § 1959(a)(5) ("Count 2"); and (3) use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), for which the predicate offense was conspiracy to commit murder in aid of racketeering ("Count 3"). On March 25, 2003, the Court sentenced Massa to a Guidelines sentence of 35 years' imprisonment.

On April 15, 2020, the Court granted, on the Government's consent, Massa's motion to pursuant to 28 U.S.C. § 2255 to vacate his conviction on Count 3 in light of United States v. Davis, 139 S. Ct. 2319 (2019). ECF No. 809. The Court amended the judgment to vacate the conviction on Count 3 and accordingly

1

reduced the defendant's sentence by 60 months' imprisonment to 30 years. On June 10, 2020, Massa appealed this amended judgment. ECF No. 814.

Massa meanwhile, on June 7, 2020, filed a motion for compassionate release, ECF No. 813, but the Court lacked jurisdiction given the pendency of Massa's appeal and therefore denied the motion, ECF. No. 817. On November 17, 2020, the Second Circuit granted Massa's motion to withdraw his appeal and returned jurisdiction to this Court. ECF No. 825.

Now before the Court is Massa's renewed motion for compassionate release, filed on December 30, 2020. ECF No. 828. Massa, who is now 63 years old and suffers from Type 2 diabetes, is currently serving his sentence at FMC Devens. He is scheduled to be released on January 4, 2027. Accordingly, Massa has approximately 6 years of his 30-year sentence remaining.

The compassionate release statute, as modified by the First Step Act, provides that after certain administrative exhaustion requirements are met, and after considering the factors enumerated in 18 U.S.C. § 3553(a), "the court . . . may reduce the term of imprisonment . . . if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

The Government objects to Massa's motion on a number of grounds, including among them that Massa failed to satisfy the statute's administrative exhaustion requirements. In particular, the Government argues that the Court may not consider the merits of Massa's motion because he never filed a request with the Bureau of Prisons ("BOP") asking that the BOP bring a compassionate release motion on his behalf. Alternatively, the Government argues that Massa's underlying crimes are so serious that a further reduction of his sentence would not comport with § 3553(a). The Court considers each of these points in turn.

I.   **The Exhaustion Requirement**

Prior to the passage of the FIRST STEP Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the BOP could file a motion for compassionate release. The inmate's role was limited to filing a request for compassionate release with the warden of his facility, setting off an often "lengthy" internal administrative process. United States v. Scparta, 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020) (citing 28 C.F.R. § 571.62(a)(1)). "The FIRST STEP Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, but only after either exhausting administrative review of a BOP denial of his request or after 30 days had passed since he made his request, whichever was

earlier." United States v. Haney, 454 F. Supp. 3d 316, 318 (S.D.N.Y. 2020). Thus, the statute permitted two routes by which a defendant's motion might come properly before a federal district court, both beginning with a request from the defendant to his warden that the BOP "bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A).

As the Second Circuit recently explained, the requirement that a defendant first file a request with the BOP is "[n]ot a jurisdictional limitation," but rather "a claim processing rule." United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021). It is, in other words, a rule intended "to promote the orderly progress of litigation" by specifying "certain procedural steps," rather than a limitation on the "court's adjudicatory capacity." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011). Accordingly, a defendant's failure to satisfy this requirement "'may be waived or forfeited' by the government" by, for example, failing to raise it as a defense in a timely manner. Saladino, 7 F. 4th at 123.

Here, however, the government has not waived or otherwise forfeited its administrative exhaustion defense. Nevertheless, Massa argues that the Court may itself excuse or "waive" the requirement that he first file a request with the BOP. In support of his position, Massa relies principally on this

4

Court's decision in Haney v. United States, 454 F. Supp. 3d at 322.

In that case, the Court concluded that it could reach the merits of the defendant's compassionate release motion even though fewer than 30 days had passed since he made his request to the warden and the BOP had yet to issue its decision, holding that the waiting period could be waived by the Court. Id. at 318, 321. As the Court explained, although exhaustion requirements generally "serve[] the twin purposes of protecting administrative agency authority and promoting judicial efficiency," "§ 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense." Id. at 321 (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). Rather, by "allow[ing] a defendant to come to court before the agency has rendered a final decision," the rule reflects "congressional intent" to elevate above that first purpose the defendant's "right to a meaningful and prompt judicial determination of whether he should be release." Id. (quoting United States v. Russo, 454 F. Supp. 3d 270, 271 (S.D.N.Y. 2020)). But reasoning "that Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply" given "the extraordinary circumstances now faced by prisoners as a result of the COVID-19 virus," the Court concluded "that [c]ongressional intent not only permits judicial waiver of the 30-day exhaustion period,

but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late." Id. at 321-22.

But while the continuing exigencies of the pandemic – particularly when combined with the overcrowded prison conditions created by years of mass incarceration – may still support waiver of the waiting period, the same cannot be said for the more modest requirement that a defendant first file a request with the BOP before a court can address the motion on the merits. In contrast to the waiting period, the request requirement does not itself delay judicial consideration of a motion and thus does not unnecessarily subject a defendant to "greater risk of infection and worse." Id. at 321. Moreover, while it is true that even before the pandemic the BOP often did not act on a request in a timely manner, see id., nevertheless, a defendant, by making such a request, initiates a process that can move in parallel to proceedings in federal court, potentially providing the defendant with the requested relief prior to judicial intervention and thus mooting any motion filed in court – a resolution that both preserves judicial resources and serves the interests of the defendant.[1]

---

[1] Indeed, had Massa filed such a request prior to bringing his initial compassionate release motion in June 2020, he may well have received a response from BOP before his present motion was fully briefed on March 30, 2021, even assuming that the BOP's

As the Supreme Court has explained, the touchstone of "any exhaustion inquiry is congressional intent." McCarthy, 503 U.S. at 144. And given these differences in how the request requirement operates in practice, the Court cannot conclude that congressional intent permits judicial waiver of the requirement that a defendant first file a request with the BOP. Indeed, the fact that Congress retained the request requirement as a predicate to both routes for judicial resolution – while otherwise reducing the role of the BOP and adding the 30-day rule "as an accelerating to judicial review", see Russo, 454 F. Supp. 3d at 271 – suggests an affirmative intent to maintain this minimal exhaustion requirement. See Johnson v. United States, 529 U.S. 694, 710 (2000) ("when a new legal regime develops out of an identifiable predecessor, it is reasonable to look to the precursor in fathoming the new law"). Accordingly, because Massa has not filed such a request, his motion is denied.

II. **The § 3553(a) Sentencing Factors**

While Massa's failure to file an initial request with the BOP is fatal to his motion, nevertheless, as indicated above, the request requirement is not jurisdictional in nature.

---

internal process, in general, "take[s] weeks, if not months." Scparta, 2020 WL 1910481, at *7 (emphasis omitted).

7

Accordingly, the Court considers the Government's alternative ground for denying the motion, i.e., application of the § 3553(a) sentencing factors. In addition to being briefed, this was orally argued on October 5, 2021, at which time his counsel especially emphasized Massa's demonstrated efforts at rehabilitation, including his service as a hospital companion to terminally ill prisoners.

But this service, while laudable, is insufficient to overcome the glaring fact that Massa committed crimes of upmost seriousness – planning and carrying out a murder in furtherance of Mafia racketeering activity. Specifically, when Massa, a longtime associate of the Decavalcante crime family, was facing financial pressure from another more senior Decavalcante associate, Joseph Conigliaro, Massa, along with a co-conspirator, conspired to murder him and hired another individual, Martin Lewis, to shoot Conigliaro. After the murder, Massa orchestrated a cover-up, which involved working with a corrupt police detective to remove shell casings from Conigliaro's vehicle and providing false information to various authorities. Given these actions, granting Massa's motion while he still has 6 years of his 30-year sentence remaining would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A).

Moreover, granting Massa's motion would create an "unwarranted sentence disparit[y]" compared to the sentence of Lewis, the shooter. Id. § 3553(a)(6). Upon Lewis's motion for compassionate release, the Court, in August of this year, reduced Lewis's sentence from life imprisonment to 30 years. See United States v. Lewis, 2021 WL 3292180, at *1 (S.D.N.Y. Aug. 2, 2021). In finding such a reduction warranted, the Court relied, in part, on the determination that there was a "pronounced disparit[y]" between Massa's 30-year sentence and Lewis's life sentence. Id. at *2. To now reduce Massa's sentence – particularly given Massa's arguably greater culpability as the individual who orchestrated the murder – would serve only to reintroduce a disparity. Thus, even if the administrative exhaustion requirement was not itself fatal to Massa's motion, the factors discussed above would preclude the Court from granting the relief Massa seeks.[2]

For these reasons, Massa's motion for compassionate release is denied.

---

[2] Because both the administrative exhaustion requirement and the § 3553(a) factors bar the Court from granting the relief Massa seeks, the Court does not address whether "extraordinary and compelling reasons warrant[ing] such a reduction" exist. 18 U.S.C. § 3553(a).

SO ORDERED.

Dated:    New York, NY

        October 18, 2021        JED S. RAKOFF, U.S.D.J.